**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

| | | |
|---|---|---|
| **BRENDA HAIRSTON,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CIVIL ACTION FILE NO.** ____________ |
| **COMMUNITY HOSPITAL HOLDING COMPANY, LLC d/b/a OPTIM HEALTH SYSTEMS,** | ) | **JURY TRIAL DEMANDED** |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiff Brenda Hairston ("Ms. Hairston" or "Plaintiff") hereby files this Complaint against Defendant Community Hospital Holding Company, LLC d/b/a Optim Health Systems ("Defendant" or the "Company") for damages and other relief for violations of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII"), 42 U.S.C. § 1981, and the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq*. (the "ADA").

## JURISDICTION AND VENUE

**1.**

This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.

**2.**

Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391 because a Defendant resides in this this District.

## ADMINISTRATIVE PREREQUISITES

**3.**

Plaintiff has exhausted all administrative requirements necessary to bring her claims. Plaintiff filed an EEOC charge based on her claims under Title VII and the ADA within 180 days of the ADA-violative conduct at issue. The EEOC issued its Notice of Right to Sue on June 1, 2022.

**4.**

This action is timely filed with respect to Plaintiff's ADA and Title VII claims as less than 90 days have passed since Plaintiff's receipt of the Notice of Right to Sue for the same.

## THE PARTIES

**5.**

Defendant is a collaborative healthcare provider, primarily in the field of orthopedics, that is organized as a domestic for-profit corporation doing business in Georgia.

**6.**

Plaintiff is a former employee of Defendant, having worked for it for as a claims analyst for around a year until her termination in April 2019.

## STATEMENT OF FACTS

**7.**

Ms. Hairston began working for Defendant in May 2018 through a

placement agency and was offered a full-time position as a Claims Analyst in October of that year, a role in which she primarily assisted in collecting outstanding medical debt from patients and third-party insurance providers.

**8.**

Her supervisor was a woman named Cindi Ashley. For the majority of her employment, Ms. Hairston was the only African American employee on her team, until March 2019 when she was assigned to train a recent hire who was African American.

**9.**

In early 2019, Ms. Ashley began to treat her in a condescending and harassing manner—one that was clearly different from the way she treated her white coworkers. As a result, Ms. Hairston began to experience severe anxiety and began to dread going to work and having to confront Ms. Ashley's treatment each day.

**10.**

Around this time, Ms. Ashely issued Ms. Hairston her first ever "substandard" performance review, which was not justified.

**11.**

Extremely discouraged and wanting to know what she could do to improve her situation, Ms. Hairston told a coworker about what had been happening to her, and the coworker responded that the treatment she was

receiving was very similar to the way that Ms. Ashley had treated other black employees who had worked for her in the past. Ms. Hairston also received a call from another former employee of Ms. Ashley who was also African American. This woman told her that she had also been harassed on the basis of her race and had successfully pursued her case with the EEOC.

**12.**

On April 9, 2019, Ms. Hairston filed an internal grievance with the Company in which she detailed Ms. Ashley's treatment of her and stated that the treatment was carried out on the basis of her race.

**13.**

Later that same day, Ms. Hairston noticed that Ms. Ashley was exhibiting odd, intimidating behavior towards her. She was staring at Ms. Hairston in a way that frightened her. At length, she approached Ms. Hairston and began to aggressively interrogate her about a wide range of topics in a manner that caused Ms. Hairston to have an anxiety attack. She began to tremble, became lightheaded, and struggled to stammer out a response to the salvo of questions Ms. Ashley had posed to her.

**14.**

Ms. Hairston was compelled to leave work and see a doctor, who advised her not to return until a further evaluation could be conducted.

**15.**

Ms. Hairston informed the Company about her situation by having her daughter take her doctor's note in to work for her the next day, but she was told that the Company did not need it.

**16.**

After she updated the Company on her status on April 7, Jessica Drew, a human resources representative, emailed her to inform her that she was ineligible for FMLA because she had not worked there for a year yet and demanded that she return to work the next day.

**17.**

Ms. Hairston returned Ms. Drew's email to ask for the Company's PTO policy and an accounting of her accrued PTO, and it was determined that she had around a week of PTO.

**18.**

Following yet another email from Ms. Drew on April 9, Ms. Hairston had her daughter inquire why she was not being permitted to use her PTO for her absence. Ms. Drew refused to communicate with her.

**19.**

Instead, she emailed Ms. Hairston again to tell her that she needed to return to work on April 17, stating that she "will have exhausted all time off available."

**20.**

On April 15, 2019, Ms. Hairston reached back out to see if there was anything else at all the Company would do to accommodate her, writing:

> I hope to be able to return to work soon and I was hoping to have a greater time of leave for my condition (anxiety disorder), but based on your response, the company is not able to grant that request for additional leave. Please let me know if any exception can be made to that policy to grant me additional leave.

**21.**

Ms. Drew replied, "Optim made a two weeks accommodation but no other time off can be granted at this time."

**22.**

The Company did not relent on this point, even though other, similarly situated white employees who had not filed complaints of racial discrimination had been granted leaves of more than two weeks under similar circumstances.

**23.**

Accordingly, Defendant denied any and all additional leave as accommodation and terminated Ms. Hairston's employment on April 17, 2019.

**24.**

As a result of these events, Ms. Hairston has suffered severe emotional trauma, and has received treatment for generalized anxiety disorder and posttraumatic stress disorder.

**COUNT I**
**VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

**25.**

Plaintiff incorporates paragraphs 1-24 by reference as if fully set forth herein.

**26.**

As an African American, Plaintiff is a member of a recognized protected class for purposes of Title VII.

**27.**

Title VII protects employees from discrimination on the basis of race in the workplace, which includes harassment and disparate treatment.

**28.**

Defendant subjected Plaintiff to unwelcome harassment on the basis of her race, particularly through Ms. Cindi Ashley, that culminated in the termination of her employment.

**29.**

This harassment was so severe and pervasive as to create a hostile working environment.

**30.**

Defendant also subjected Plaintiff to disparate treatment on the basis of her race by refusing to allow her more than two weeks of medical leave, while

allowing such leave to other, white coworkers.

**31.**

Title VII also prohibits retaliation for having engaged in what it deems protected activity.

**32.**

By filing an internal complaint of race discrimination, Plaintiff engaged in protected activity.

**33.**

Defendant retaliated against Plaintiff by harassing her following her protected activity and ultimately terminating her employment for the same.

**34.**

Plaintiff is entitled to all damages permitted by law for Defendant's actions as described in this count, including but not limited to compensatory and punitive damages, back pay, front pay, lost benefits, and attorney's fees and costs.

## COUNT II
## VIOLATIONS OF 42 U.S.C. § 1981

**35.**

Plaintiff incorporates by reference Paragraphs 1-34 as if fully set forth herein.

**36.**

As an African American, Plaintiff is a member of a recognized protected class for purposes of 42 U.S.C. § 1981.

**37.**

42 U.S.C. § 1981 protects employees from discrimination on the basis of race in the workplace, which includes harassment and disparate treatment.

**38.**

Defendant subjected Plaintiff to unwelcome harassment on the basis of her race, particularly through Ms. Cindi Ashley, that culminated in the termination of her employment.

**39.**

This harassment was so severe and pervasive as to create a hostile working environment.

**40.**

Defendant also subjected Plaintiff to disparate treatment on the basis of her race by refusing to allow her more than two weeks of medical leave, while allowing such leave to other, white coworkers.

**41.**

42 U.S.C. § 1981 also prohibits retaliation for having engaged in what it deems protected activity.

**42.**

By filing an internal complaint of race discrimination, Plaintiff engaged in protected activity.

**43.**

Defendant retaliated against Plaintiff by harassing her following her protected activity and ultimately terminating her employment for the same.

**44.**

Plaintiff is entitled to all damages permitted by law for Defendant's actions as described in this count, including but not limited to compensatory and punitive damages, back pay, front pay, lost benefits, and attorney's fees and costs.

## COUNT III
## VIOLATIONS OF THE AMERICANS WITH DISABILITES ACT

**45.**

Plaintiff incorporates by reference Paragraphs 1-43 as if fully set forth herein.

**46.**

The ADA prohibits employers from discriminating against qualified individuals with disabilities on the basis of those disabilities.

**47.**

Discrimination under the ADA includes the denial of reasonable

accommodations requested by qualified employees for their disabilities.

**48.**

The ADA also prohibits retaliation against qualified employees for engaging in what it deems protected activity. Protected activity includes requesting and utilizing accommodations for their disabilities.

**49.**

Plaintiff was a qualified individual with a disability during her employment with Defendant.

**50.**

Defendant discriminated against Plaintiff in violation of the ADA by terminating Plaintiff's employment on the basis of her disability.

**51.**

Defendant also violated the ADA by terminating Plaintiff's employment in retaliation for requesting an accommodation in the form of leave.

**52.**

Defendant also refused to reasonably accommodate Plaintiff by allowing her no more than two weeks of leave and making a blanket rejection to any request for additional leave.

**53.**

Defendant also failed to reasonably accommodate Plaintiff by unconditionally refusing to engage in an interactive process with her to

determine which reasonable accommodations might have allowed her to continue working.

**54.**

Plaintiff is entitled to all damages permitted by law for Defendant's actions as described in this count, including but not limited to compensatory and punitive damages, back pay, front pay, lost benefits, and attorney's fees and costs.

**WHEREFORE** Plaintiff respectfully requests judgment in her favor on each count in this Complaint and demands:

1. A Jury Trial;
2. Judgment in Plaintiff's favor and against Defendant under all claims in this Complaint;
3. An order Defendant to make whole Plaintiff by providing her with out-of-pocket losses as well as back pay in an amount equal to the sum of wages, salary, employment benefits and other compensation denied or lost as a result of Defendant's unlawful acts, together with interest thereon, all in an amount to be proven at trial;
4. Statutory damages and penalties under the Title VII;
5. Statutory damages and penalties under 42 U.S.C. § 1981;

6. Statutory damages and penalties under the ADA;

7. An Order granting Plaintiff her reasonable attorney's fees and all other fees and costs associated with this action;

8. Declarative and injunctive relief appropriate to remedy the Title VII violations;

9. Declarative and injunctive relief appropriate to remedy the 42 U.S.C. § 1981 violations;

10. Declarative and injunctive relief appropriate to remedy the ADA violations;

11. Prejudgment interest; and

12. Such other and further relief as is just and proper.

This 12th day of August 2022.

*/s/ James M. McCabe*
James M. McCabe
Georgia Bar No. 724618
The McCabe Law Firm, LLC
3355 Lenox Road
Suite 750
Atlanta, GA 30326
Office: (404) 250-3233
Fax: (404) 400-1724
jim@mccabe-lawfirm.com

Attorney for Plaintiff Brenda Hairston